Garold PETERSON, Plaintiff and Appellant,

v.

SAFWAY STEEL SCAFFOLDS COMPANY of South Dakota and Hi-Lo Powered Scaffolding, Inc., Defendants and Appellees.

No. 15340.

Supreme Court of South Dakota.

Feb. 18, 1987.

Bradley G. Bonynge, Sioux Falls, for plaintiff and appellant.

Arlo D. Sommervold of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendant and appellee Safway Steel Scaffolds Co. of South Dakota.

Danforth, Danforth & Johnson, Sioux Falls, for defendant and appellee Hi-Lo Powered Scaffolding, Inc.

WUEST, Chief Justice.

This is an appeal from the trial court's grant of summary judgment against the plaintiff in a personal injury case. He appeals. We reverse.

Appellant, Garold Peterson (Peterson), was an employee of Gage Brothers Concrete Products in Sioux Falls, South Dakota. On September 28, 1983 Peterson and a co-worker, Warren Kramer (Kramer), were washing and inspecting concrete panels on a Citibank building utilizing scaffolding equipment leased from Safway Steel Scaffolds Company (Safway) and manufactured by Hi-Lo Powered Scaffolding, Inc. (Hi-Lo), defendants and appellees.

The scaffold equipment and four roof hooks were on the job site when appellant and Kramer arrived the morning of the accident. The two men set up the equipment employing the roof hooks. Upon raising the stage upward, however, the men discovered that it was being drawn too close to the side of the building. Kramer, appellant's supervisor, discussed the problem with Fred Gage his supervisor and former safety director of Gage Brothers. Gage decided to go along with Kramer's suggestion to utilize parapet clamps instead of roof hooks since the parapet clamps suspended the cables further away from the side of the building.

Kramer had some prior experience with the parapet clamps and the scaffolding that was being used, but appellant had never worked on scaffolding and had no experience with the equipment. Therefore, Kramer instructed appellant how to rig the clamps so that while appellant moved the clamps on the roof Kramer could move the stage at ground level to begin work on another section of the building. However, Kramer in fact did not know how to properly use the parapet clamp, and both he and the appellant rigged the clamps to the top of the parapet wall in a backwards position. The end of the clamp that was designed to absorb the weight of the scaffolding faced inward instead of outward, and the end of the clamp that was supposed to face inward to receive a tieback cable or anchoring line was used to suspend the scaffolding. While Kramer had used the clamps in this manner on several other occasions, a tieback cable had always been attached to the clamps as required. On this occasion, a tieback was not used because there were no anchor points on the roof. Moreover, since the parapet wall was not tall enough or thick enough to properly accept the clamp, the workers improvised by placing blocks of wood against the wall and tightening the clamps against them.

Kramer rented the parapet clamps from Safway, but he was not given the safety, operating, maintenance and parts manual. Safway had allegedly given such a manual to a Gage Brothers employee previously when the other scaffolding equipment was rented and delivered to the job site. However, any manual that may have been given to the employee was apparently not left at the job site with the other equipment, but may have been given to Fred Gage.

As Kramer and the appellant raised the scaffolding for the third time, the appellant looked up and noticed that the clamp on his end was bending inwards. He shouted a warning to Kramer and reached for the motor to lower the scaffolding, but before he could do so the clamp came off the wall and the platform fell. Kramer and the appellant fell approximately five feet until they were caught by their safety lines. Appellant's arm was injured when it either became caught in the safety rope or was struck by a piece of equipment.

Appellant brought suit against Safway under strict liability, negligence and warranty theories. Safway filed a third party complaint against Hi-Lo seeking indemnity for any recovery against it by the appellant and requesting a determination of the relative degrees of fault as between Safway and Hi-Lo. Appellant later joined Hi-Lo with Safway as a defendant by an amended complaint. Both defendants moved for summary judgment, which was granted.

■ Appellant states in his brief that while he raises only the strict liability issue against both defendants, he does not mean to imply that he waives an appeal of the warranty and negligence claims. However, having failed to raise any argument or authority in support of the warranty and negligence claims, we hold he has abandoned any appeal on those issues. "SDCL

15–26A–60(4) and (6) require that appellant's brief contain a concise statement of the legal issues, related argument and citation of authorities supporting the argument ... Appellant's failure to comply with SDCL 15–26A–60 is a waiver of all issues not raised, briefed and argued." *Graham v. State*, 328 N.W.2d 254 (S.D.1982). We review the strict liability issues.

■ South Dakota adopted the rule of strict liability in tort as expressed in RESTATEMENT (SECOND) TORTS § 402A (1965), in *Engberg v. Ford Motor Co.*, 87 S.D. 196, 205 N.W.2d 104 (1973). *See Zacher v. Budd*, 396 N.W.2d 122 (S.D.1986); *Hamaker v. Kenwel-Jackson Machine, Inc.*, 387 N.W.2d 515 (S.D.1986).

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer * * *.

*REST.*2d, *supra*, § 402A(1). Strict liability requires that the product be defective and unreasonably dangerous. *Zacher, supra.* "The rule in this section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product, to any wholesaler or retail dealer or distributor ..." *REST.*2d, *supra*, comment *f.*

■ Three broad classes of defects have emerged: manufacturing defects where individual products within a product line are improperly *constructed, design* defects involving the entire product line, and defect by *failure to properly warn* or instruct users of a product where such failure renders the product hazardous. 2 Frumer & Friedman, Products Liability § 3.03[4][f][i] (1986). The warning issue is important. The warnings contained on a product, as well as warnings that are missing, are just as important in strict liability as in negligence and warranty. This is because an otherwise properly manufactured and well-designed product may be found to be defective without an adequate warning. *Frumer, supra*, § 3.03[4][f][vi].

■ In strict liability the plaintiff need not prove scienter of the defendant, i.e., that defendant knew or should have known of the harmful character of the product without a warning. *Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 55, 427 N.Y.S.2d 1009 (1980). Liability arises from selling any product in a defective condition unreasonably dangerous to the user or consumer. It is the unreasonableness of the condition of the product, not of the conduct of the defendant, that creates liability. *Jackson v. Coast Paint and Lacquer Co.*, 499 F.2d 809 (9th Cir.1974).

■ "In a products liability action based on negligence, the proof must show that the manufactuer or seller failed to exercise reasonable care to inform those expected to use the product of its condition or the facts which make it likely to be dangerous." *Jahnig v. Coisman*, 283 N.W.2d 557, 560 (S.D.1979); RESTATEMENT (SECOND) OF TORTS § 388 (1965). "Strict liability in products liability cases, on the otherhand, relieves the plaintiff of the burden of proving negligence by the manufacturer." *Jahnig, supra; Engberg v. Ford Motor Co.*, 87 S.D. 196, 205 N.W.2d 104 (1973); *REST.*2d, § 402A, Comment *a.* The issue under strict liability is whether the manufacturer's failure to adequately warn rendered the product unreasonably dangerous without regard to the reasonableness of the failure to warn judged by negligence standards. *Hamilton v. Hardy*, 37 Colo.App. 375, 549 P.2d 1099 (1976). "For purposes of the strict tort claims, but not for purposes of the negligence claim, knowledge of the potential risk is imputed to the manufacturer. The manufacturer cannot defend, as he could in a negligence case, on grounds that, at the time of production, he neither knew nor could have known of the risk." R. Dugan, Reflections on South Dakota's Trifucated Law of Products Liability, 28 S.D.L.Rev. 259 (1983); *See Beshada v. Johns-Manville Products Corp.*, 90 N.J. 191, 447 A.2d 539 (1981); *Freund v. Cellofilm Properties Inc.*, 87 N.J. 229, 432 A.2d 925, 929–31 (1981).

Whether a manufactuer knew or should have known of a particular risk involves technical issues which do not easily admit to evidentiary proof and which lie beyond the comprehension of most jurors. By placing the risk of ignorance upon the manufactuer, the rule advances the policy of enterprise liability underlying strict tort liability.

*Dugan, supra; See, e.g., GRYC v. Dayton-Hudson Corp.,* 297 N.W.2d 727 (Minn. 1980); *REST.*2d, § 402A, *supra,* Comment *c.*

It provides the manufacturer with an incentive to conduct the research necessary to provide safer design and warnings, matters uniquely with in his control. Through insurance and increased product prices, this approach shifts the cost of unknowable and unpreventable risks from the injured party to the consuming public. On the other hand, in that risk-utility-cost considerations remain relevant for the manufacturers ultimate liability, the rule accords with the sentiment against insurer-like liability for manufacturers. Finally, the distinction overcomes the anomaly that, as applied without regard to the distinction, section 402A adds little or nothing to the manufacturer's negligence liability in the most common products cases.

*Dugan, supra.*

■ Hi-Lo argues that plaintiff misused its product and therefore it should not be strictly liable. Misuse may involve using a product for an unintended function or using the product for its intended purpose but in an improper manner. Simply because the product is misused does not necessarily bar a cause of action based on strict liability. " '[O]ne who manufactures or sells a product has a duty not only to warn of dangers inherent in a product's intended use but also to warn of dangers involved in a use which can be reasonably anticipated.' " This duty to warn applies in cases based on negligence and strict liability in tort. *Zacher, supra,* at 135 (quoting *Olson v. A.W. Chesterton Co.,* 256 N.W.2d 530 (N.D.1977)). However, a different test

is applied under strict liability when the defendant manufacturer attempts to defend on the basis of a misuse of his product. Instead of imputing knowledge of all potential misuses of the product, when a misuse occurs it becomes a question of whether there was "reason to anticipate" or if it was "foreseeable". "Where a manufacturer or seller has reason to anticipate that danger may result from a particular use of his product, and he fails to give adequate warnings of such a danger, the product sold without such warning is in a defective condition within the strict liability doctrine." *Jahnig, supra;* RESTATEMENT (SECOND) OF TORTS, § 402A, Comment *h.* "A manufacturer may be held liable where the misuse by the customer was reasonably foreseeable.... Whether the use or misuse was reasonably foreseeable is ultimately a jury question." *Zacher, supra.*

The issues of "unreasonably dangerous" under Section 402A and "foreseeable misuse" are an introduction of negligence concepts to strict liability theory. However, a manufacturer or seller is not an insurer, and so there is a standard by which the value in a product is compared with the level of dangerousness it may possess. There is also a standard to determine what types of misuse the consumer public would find to be foreseeable. These issues of reasonableness and foreseeability in strict liability are usually jury issues.

The manufacturer, Hi-Lo, defends the grant of summary judgment by citing SDCL 20-9-10, which provides:

No manufacturer, assembler or seller of a product may be held liable for damages for personal injury, death or property damage sustained by reason of the doctrine of strict liability in tort based on a defect in a product, or failure to warn or protect against a danger or hazard in the use or misuse of such a product, or failure to properly instruct in the use of such product, where a proximate cause of the injury was an alteration or modification of such product made under all of the following circumstances:

(1) The alteration or modification was made subsequent to the manufacture, assembly or sale of the product;

(2) The alteration or modification altered or modified the purpose, use, function, design or manner of use of the product from that originally designed, tested or intended by the manufacturer, assembler or seller; and

(3) It was not foreseeable by the manufacturer, assembler or seller of the product that the alteration or modification would be made, and, if made, that it would render the product unsafe.

The statute removes a manufacturer, assembler or seller from liability for defects where there is "an alteration or modification of such product". Appellees argue that there was a modification because the two workers not only failed to make use of tie back cables, but they also improvised with blocks of wood in securing the parapet clamps. While these actions may have had a definite impact on the effectiveness of the clamps, this was not a modification of the product itself. The statute covers situations where a consumer makes modifications of a product which defeat the safety which is engineered into that product. A consumer creates manufacturer immunity under SDCL 20-9-10 by changing the product from its original form, not by using it improperly. Even if we were to accept Hi-Lo's view, section (3) brings in foreseeability, which is a jury issue. For the reasons stated above, we hold the trial court erred in granting summary judgment to the manufacturer, Hi-Lo on the issue of strict liability.

The rule stated in RESTATEMENT (SECOND) OF TORTS § 402A applies to anyone engaged in business of selling products for use or consumption. It applies to manufacturers, wholesalers, dealers or distributors but does not apply to the occasional seller, as where an automobile owner sells his car to his neighbor or to a dealer in used cars. RESTATEMENT 2d § 402A, Comment *f*; Frumer, *supra*, § 3.03[4][b][i].

Many jurisdictions have applied strict liability in tort to commercial lessors. See the cases cited in *Miles v. General Tire & Rubber Co.*, 10 Ohio App.3d 186, 460 N.E.2d 1377 (1983), *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977), and 52 A.L.R.3d 121 (1973). "There is no logical reason to distinguish commercial lessors from manufacturers or sellers for the application of strict liability for dangerously defective goods." *Miles, supra*. Commercial lessors, like manufacturers and sellers, regularly introduce potentially dangerous products into the stream of commerce for profit and similarly are in a better position than lessees to insure against the risk of injuries from products in which they deal regularly. *Miles, supra; Santiago v. E.W. Bliss Div.*, 201 N.J. Super. 205, 492 A.2d 1089 (A.D.1985).

The nature of a commercial transaction by which a product is placed in the stream of commerce is irrelevant to the policy considerations which justify strict liability. A lessor is subject to strict liability because his position in the "overall production and marketing enterprise" is no different from that as a seller.

*Crowe v. Public Bldg. Com'n of Chicago*, 74 Ill.2d 10, 23 Ill.Dec. 80, 383 N.E.2d 951, 953 (1978).

Safway makes no claim it was not a seller, and as a matter of fact, Safway volunteers it should be considered a seller in order to avoid strict liability under SDCL 20-9-9, which states:

No cause of action based on the doctrine of strict liability in tort may be asserted or maintained against any distributor, wholesaler, dealer or retail seller of a product which is alleged to contain or posses a latent defective condition unreasonably dangerous to the buyer, user, or consumer unless said distributor, wholesaler, dealer or retail seller is also the manufacturer or assembler of said product or the maker of a component part of the final product, or unless said dealer, wholesaler or retail seller knew, or, in

the exercise of ordinary care, should have known of the defective condition of the final product. Nothing in this section shall be construed to limit any other cause of action from being brought against any seller of a product.

■ We interpret SDCL 20–9–9 that a seller may be strictly liable, but only if he knew or through "ordinary care" should have known of the defective condition of the product. In essence SDCL 20–9–9 says there may be strict liability, but as a matter of proof, knowledge of the defective condition will not be *imputed* to a nonmanufacturing middleman as would otherwise be the case under strict liability.

■ We hold Safway open to strict liability if it "knew, or in the exercise of reasonable care, should have known of the defective condition of the final product." This is a factual issue which must be resolved by the jury. There was evidence from an alleged expert that a warning should have been placed on the parapet clamps so a person using the clamps would not use them backwards or without a tie line. Since Safway was in possession of the clamps, it could be inferred they knew, or in the exercise of reasonable care, should have known the clamps were in a defective condition by not having the warning appear on the clamps. There are also jury questions as to proximate cause and misuse of the clamps.

The summary judgment is reversed and the case remanded for trial on the strict liability issue.

MORGAN, J., and FOSHEIM, Retired Justice, concur.

HENDERSON, J., concurs specially.

SABERS, J., concurs in part and dissents in part.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (concurring specially).

This appellant has not presented either argument or authority in support of negligence claims. Therefore, he has not preserved his appellate record. We have held that an error not briefed or argued is deemed abandoned. *See Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (S.D.1976).

In *Smith v. Smith*, 278 N.W.2d 155, 162 (S.D.1979), this author concurred specially and filed an opinion. In the same *Shaffer*, 249 N.W.2d 251, cited above, this Court affirmed its position taken in *Engberg*, 205 N.W.2d 104, which is cited in the majority opinion. Basically, as I pointed out in my special concurrence, strict liability was not created in this state by legislative fiat; rather it was the progeny of the judiciary. This case is going back to the trial court for trial on strict liability. There are numerous foreign authorities cited in the majority opinion and perhaps we could well stay at home.

Specifically, again referring to the *Smith* case, and referring to the said special concurrence, I should like to point out that the *Smith* case was the first time that this state ever addressed the question of the defenses available on a case brought under the strict liability. In said special concurrence, to which I allude again, I expressed that so far as my legal views were concerned:

I would hold that in the State of South Dakota under a given set of facts that:

(a) assumption of the risk; or

(b) misuse of the product

are available as defenses in strict liability cases.

*Smith*, 278 N.W.2d at 162 (Henderson, J., specially concurring). As regards the defenses of contributory negligence, comparative negligence, and contributory fault, I attempted to break these down as not being available in the defense of a strict liability case. In *Smith*, 278 N.W.2d at 162, this author noted:

I would further hold that in the State of South Dakota under a given set of facts that:

(a) the classical negligence defenses are not available in the defense of a strict liability case. The judicially created tort of strict liability is not founded in negligence;

(b) inasmuch as the strict liability theory is not based on negligence, that contributory negligence cannot be interposed as a defense;

(c) although South Dakota has the comparative negligence doctrine, which is akin to the comparative fault theory now adopted by California and Alaska to reduce a plaintiff's recovery, this is not available as a defense in a strict liability action; and

(d) "contributory fault" is just another way of saying "contributory negligence" and should not be available as a defense to a case founded on strict liability.

I also tried to gather authorities on this subject and discuss the division of authority regarding defenses which are available in strict liability cases.

Within the *Smith* special concurrence, at 163, which I still believe today, I expressed:

A manufacturer or distributor or retailer should not be at the mercy of a fool. So, lest it be considered that they are under a legal handicap by elimination of the classical negligence defenses, contributory negligence, comparative negligence or comparative fault defenses, these target defendants can plead and prove assumption of the risk or misuse of the product.

SABERS, Justice (concurring in part and dissenting in part).

I concur in part and dissent in part.

I think this court is overreacting to SDCL 15–26A–60 which results in decisions that rely too heavily on waiver of a point or argument by failure to cite authorities.

For example, in this case appellant's brief relies on theories of negligence and breach of warranty as well as strict liability in tort. At page seven, appellant's brief states:

For purposes of simplicity the theory of strict liability in tort will be emphasized in this argument. Plaintiff does not wish to imply that the theories of negligence and breach of warranty are not equally applicable to his claim by reason of this emphasis.

In other words, appellant is really saying that the arguments and authorities apply to all three theories even though he's choosing not to restate them three separate times. In my opinion he shouldn't have to either, even if he didn't express this as well as he might have.

On remand, appellant should have an opportunity to prove all three theories of liability.