# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 05-1594

_____

| | | |
|---|---|---|
| Benjamin Neal Moots, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| | * | |
| George Lombardi; Cadena Brim; Joe | * | |
| Sampson; Susan Brinkman; Kim | * | |
| Krafve; Brenda Short; Gary Kempker, | * | |
| Director of the MO Department of | * | |
| Corrections; Paul Bergfeld, Director of | * | |
| Population Management; Wilbur | * | |
| Gooch, Jr.; Randee Kaiser, Assistant | * | |
| Director/Health Services, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: January 13, 2006
Filed: July 13, 2006

_____

Before LOKEN, Chief Judge, McMILLIAN[1] and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Benjamin Neal Moots brought this action under 42 U.S.C. § 1983, claiming that while he was incarcerated at the Missouri Eastern Correctional Center (MECC), prison officials were deliberately indifferent to his serious mental health needs and that officials retaliated against him for filing a grievance. The district court[2] granted summary judgment in favor of the defendants and declined to exercise supplemental jurisdiction over the state law claims. We affirm.

I.

Moots was incarcerated at the MECC from July 13, 2000, until April 1, 2003, when he was transferred to the Southeast Correctional Center (SECC). On August 14, 2002, Moots filed an Informal Resolution Request (IRR) claiming that MECC staff forced him to take a particular job assignment and denied him privileges based on his "psychiatric disability." Moots claimed these actions were taken in retaliation for a phone call made to the staff by one of Moots's relatives. No resolution was reached and Moots withdrew the IRR on September 26, 2002.

For a period of time prior to September 17, 2002, Moots shared a cell with Brian Neaveill in an Honor Status Unit at the MECC. According to the defendants,

_____

[1]The Honorable Theodore McMillian died on January 18, 2006. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E. The opinion is consistent with the views expressed by Judge McMillian at the conference following oral argument.

[2]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

residency in this unit, which includes special privileges, is restricted to inmates who have earned "honor status" on the basis of good behavior. Moots lost his honor status on October 4, 2002, because he received a conduct violation. After Moots lost his honor status, officials issued him at least twelve additional conduct violations between October 2002 and March 2003. He contends that these violations were issued in retaliation for the IRR he submitted.

One of the conduct violations Moots received was for fighting. This violation was issued after MECC staff received an anonymous tip that Moots had been assaulted. When Moots was examined, there was bruising around one of his eyes. On September 27, 2002, a hearing was held regarding this violation, and Kim Krafve, a Correctional Caseworker, recommended removal from honor status. On October 1, 2002, Cadena Brim, the Assistant Superintendent, determined that the Moots's injury was the result of an accident and expunged the conduct violation.

Moots suffers from bipolar disorder and a severe social anxiety disorder related to a history of childhood sexual abuse. Moots was treated for his disorders while housed at the MECC and was prescribed medication. However, Moots alleges that Krafve failed to make sure Moots's prescription medication was promptly provided when Moots was sent to solitary confinement. Moots further contends that he sustained severe deterioration of his mental and physical health as a result of the defendants' failure to house him in accordance with a recommendation made by Brian MacMillan, the Institutional Chief of Mental Health Services. MacMillan counseled MECC staff that Moots should be placed with cellmates of Moots choosing if doing so did not "break any custody or classification rules or criteria." The defendants argue that they could not place Moots with the cellmates of his choice for multiple reasons including safety concerns.

Moots also contends that his transfer to the SECC was retaliatory. He testified that one of the defendants told him he would be transferred if he continued to

complain about his housing. It is undisputed, however, that the Dept. of Corrections revised its inmate classification system on January 1, 2003, that the new policy required reclassification of all inmates, and that the MECC's custody level was reduced from level 4 to level 3. Upon reclassification, Moots was deemed a category 5 risk - the highest level. The new classification system had a grandfather clause that allowed an inmate to remain in his current institution if he had good "institutional adjustment" in the prior two years and if he had not received more than five conduct violations in the same period. Because Moots had eighteen violations over the relevant period, he was not allowed to remain at the MECC. Moots claims that in the absence of the violations that he claims were issued in retaliation, he could have remained at the MECC.

## II.

We review the district court's grant of summary judgment de novo. Hitchcock v. FedEx Ground Package Systems, Inc., 442 F.3d 1104, 1106 (8th Cir. 2006). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.

The first issue in this case is whether Moots was deprived of medical care in violation of the Eighth Amendment. To prove this claim, Moots must establish that the defendants were deliberately indifferent to his serious medical needs. Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997). Moots must also establish "that the medical deprivation was objectively serious and that [the defendants] subjectively knew about the deprivation and refused to remedy it. Moore v. Jackson, 123 F.3d 1082, 1086 (8th Cir. 1997). We find that Moots cannot prove these elements.

Between February 4, 2002, and March 12, 2003, Moots saw mental health staff, counselors, and medical doctors at least thirty-eight times. He was also prescribed numerous medications. Moots does not allege that he was ever denied treatment nor

that the treatment he received was inadequate. Rather, he contends that the defendants violated his Eighth Amendment rights by failing to house him with specific cellmates and, on one occasion, failing to promptly provide his medication.

As discussed in the district court's detailed opinion, there were ample reasons for the defendants to make the housing choices they did. Furthermore, there is no evidence that defendants had reason to know that their housing choices would have a serious negative impact on Moots's mental health. The fact that one staff member recommended certain housing arrangements if doing so did not "break any custody or classification rules or criteria," does not imply that medical harm would result if that recommendation was not followed. Although Moots claims to have suffered as a result of being housed with violent, sexually abusive inmates, he offers only vague testimony on this matter. He never complained about a specific inmate, never voiced any concerns about a specific threat to his safety, and never requested protective custody despite the knowledge that he could do so.

The only additional "deliberate indifference" argument Moots makes is that Krafve failed to ensure his prescription medications were promptly transferred with Moots to solitary confinement. Assuming this argument to be true, Moots's claim still fails because he has not alleged that he suffered any harm as a result of this temporary delay. See Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997) (inmate complaining of delay in medical treatment must present verifying medical evidence to show that the delay had detrimental effect).

Moots's claims of retaliation also fail. Conduct violations cannot be deemed retaliatory when they were issued for actual violations of prison rules. Moore v. Plaster, 266 F.3d 928, 931 (8th Cir. 2001). Therefore, a defendant may successfully defend a retaliatory discipline claim by showing "some evidence" that the inmate actually committed a rule violation. Goff v. Burton, 7 F.3d 734, 739 (8th Cir. 1993).

The district court thoroughly laid out each of the conduct violations imposed. Moots acknowledged the conduct that led to many of the violations. The only violation that he seriously disputes on appeal is the one issued for fighting that was later expunged.

Although Moots asserts that one of the defendants asked him to dismiss his IRR near the time of this violation, Moots does not dispute that he was bruised around his eye when he was examined. Accordingly, there is some evidence that supported the violation for fighting. Moore, 266 F.3d at 931; Goff , 7 F.3d at 739 (applying "some evidence" standard to a prisoner's retaliation claims). The fact that the conduct violation was later expunged does not mean that there was not some evidence for its imposition. See Davis v. Sancegraw, 850 F. Supp 809, 813 (E.D. Mo. 1993) ("The fact that plaintiff ultimately had his record expunged of a charge is testimony to the fact that he received due process, rather than proof it was denied.").

Moots's claim of retaliatory transfer also fails. He neither disputes the computation of his classification score nor the conclusion that his score made him ineligible to remain at the MECC. As we have already determined that the conduct violations imposed on Moots were not retaliatory, there is no merit to his remaining argument that his ineligibility to remain at MECC was unfairly impacted by improperly assessed conduct violations.

In summary, we conclude that the defendants are entitled to summary judgment on all of Moots's § 1983 claims. Because we find that it was proper to grant summary judgment for the defendants as to Moots's § 1983 claims, it was not an abuse of discretion for the district court to decline to exercise supplemental jurisdiction over Moots's remaining state law claims. Gibson v. Weber, 433 F.3d 642, 647 (8th Cir. 2006) (citing 28 U.S.C. § 1367(c)).

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____