# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2775

_____

Tony Lanier Jackson

*Plaintiff - Appellant*

v.

Nursing Supervisor Riebold; United States of America

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: September 24, 2015
Filed: February 24, 2016

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Tony Lanier Jackson, an inmate incarcerated at the United States Medical Center for Federal Prisoners (USMCFP) in Springfield, Missouri, filed a pro se civil action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Nursing Supervisor Shannon Riebold. Jackson alleges that Riebold was deliberately indifferent to his serious medical needs by failing to respond in a timely manner when the artery comprising Jackson's dialysis access port

ruptured. On appeal, Jackson argues that the district court[1] erred in (1) granting summary judgment to Riebold on Jackson's deliberate-indifference claim, (2) denying Jackson additional discovery to oppose Riebold's summary-judgment motion, and (3) denying Jackson leave to amend his complaint to include a deliberate-indifference claim against David L. Douglas, PA-C. We affirm.

## I. *Background*

Jackson is a federal inmate who, at the time of the events alleged in his complaint, was incarcerated at the USMCFP in Springfield, Missouri. The Bureau of Prisons (BOP) placed Jackson at the USMCFP because he has end-stage renal disease, which requires dialysis treatment three times per week. Jackson also has anemia, peripheral neuropathy, and hypertension. In order for Jackson to receive dialysis treatment, he has an arteriovenous (AV) fistula, which is a surgically-created connection between an artery and a vein. The AV fistula enables hemodialysis. Hemodialysis removes a patient's blood, filters it, and returns it to the body. During the relevant time period, Jackson was dialyzing through an AV fistula on his right arm created several years prior. Over time, AV fistulas may become prone to develop a pseudoaneurysm—a pocket of blood created by a leak or a hole in the artery.

On June 11, 2012, Jackson was evaluated for a possible pseudoaneurysm after the USMCFP staff in the dialysis department reported that he had an enlarged area on his AV fistula. During this evaluation, Jackson informed Douglas, a certified physician's assistant, that the enlarged area on his AV fistula had existed for approximately two weeks. According to Jackson, the AV fistula had "'always' been large." Douglas reported "no active bleeding" and that Jackson had stated that the site had "gotten smaller over the past 1 w[ee]k." Douglas counseled Jackson to immediately report any issues that he may have with his dialysis access port because

---

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

of the potentially serious consequences, including death. Jackson indicated that he understood. Douglas ordered an ultrasound of Jackson's AV fistula to evaluate the pseudoaneurysm for possible repair and ordered mapping to determine the necessity of a new AV fistula for dialysis access. Douglas also advised Jackson "to notify staff if any bleeding occurs" and indicated that he would "make further clinical decisions based on [the ultrasound] results."

Jackson met with the USMCFP's consulting nephrologist on June 11, 2012. In his report (dated June 25, 2012), the nephrologist indicated that Jackson had "developed a very large right forearm pseudoaneurysm associated with his AV fistula. He will be referred to the surgeon for revision of same."

The ultrasound and mapping were completed on June 19, 2012, and the USMCFP received those results on June 25, 2012. During that time, Jackson continued to receive dialysis treatments with no complications or complaints noted.

On June 28, 2012, Riebold was assigned as the nursing supervisor on the "Morning Watch" shift, which starts at 8:00 p.m. and ends at 8:00 a.m. the following day. Nursing supervisors assigned to this shift are not assigned to one specific area of the USMCFP but instead must cover all areas of the institution and respond to any medical-related issues that may arise during that shift. If a medical emergency arises, nursing supervisors must respond to the emergency, assess the situation, and make decisions related to providing further nursing care, if necessary.

That day, Jackson's pseudoaneurysm ruptured. Jackson avers that the pseudoaneurysm ruptured at "approximately 9:40 p.m." At that time, Jackson maintains that Unit Officer Gary Jergenson called Riebold from the officers' station. Three inmates—Dusty Cox, Donald Fletcher, and Gregory Weatherall—assisted Jackson following the rupture by wrapping his arm with towels to try and stop the bleeding. According to Cox, Riebold "arrived" at "approximately 10:00[]p[.]m[.]"

But, according to inmate Donald Fletcher, Riebold *had already left* from examining Jackson's arm "at around 9:45 p.m. or so." Cox maintains that Riebold "left the unit [at] appro[x]imately 10:03[]p[.]m[.]" In any event, Jackson maintains that upon Riebold's arrival, Riebold looked at Jackson's arm; told Jackson, "I'll be back"; and and then departed. According to Jackson, Officer Jergenson called Riebold a second time, and Riebold responded again. Cox avers that this second call occurred "[a]t appro[x]imately 10:45[]p[.]m[.]," after he "and inmate Fletcher asked Officer Jergenson what was taking so long." But, according to Fletcher, "[i]t was about 10:35 [p.m.] when [Riebold] returned." Weatherall agrees that Riebold returned "around 10:35 [p.m.] or so." According to Fletcher, Riebold exited the unit with Jackson "at approximately 10:58 p.m.," Jackson entered the ambulance at "11:28 p.m.," and the ambulance departed with Jackson "[a]t about 11:35 [p.m.]" Cox similarly avers that Riebold took Jackson from the unit "[a]t approximately 11:00[]p[.]m[.]" Records from the BOP also show that Jackson departed from the USMCFP to the local, outside hospital not later than 11:28 p.m. Riebold likewise entered a note into the BOP's electronic medical record system at 11:30 p.m., indicating that Jackson was taken via ambulance to the hospital.

Upon Jackson's arrival at the hospital, he underwent emergency surgery. The surgery successfully repaired the ruptured fistula without complication, and Jackson was given a new dialysis access port prior to his discharge from the hospital on July 2, 2012.

Jackson filed a pro se *Bivens* action against Riebold, alleging a deliberate-indifference claim. Jackson contended that Riebold failed to respond in a timely manner when Jackson's AV fistula ruptured and that this delay in treatment violated the Eighth Amendment's prohibition against cruel and unusual punishment.

Riebold moved for summary judgment, arguing that (1) sovereign immunity barred Jackson's official-capacity claims, (2) Jackson failed to show a violation of his

-4-

constitutional rights, and (3) qualified immunity shielded Riebold from personal liability. After Riebold moved for summary judgment, Jackson moved to "dismiss" Riebold's summary-judgment motion or, in the alternative, to stay a ruling on the summary-judgment motion pending further discovery. Jackson wanted to obtain video footage of the incident alleged in his complaint. Riebold replied that, as shown in the declaration of S. Anderson, Special Investigative Agent (SIA) at the USMCFP, no video footage of the alleged incident exists. SIA Anderson averred that events like Jackson's June 28, 2012 medical emergency would not typically be preserved for review by the video surveillance system. SIA Anderson reviewed the retained video files to determine if video footage was stored from the date of the incident and determined that no video footage exists concerning Jackson or the incident. Riebold further argued that discovery was not necessary because Riebold's pending motion hinged on the substantial evidentiary record already produced in the case. Riebold contended that Jackson failed to set forth what additional facts discovery might reveal. The district court denied Jackson's motion to stay a ruling on Riebold's summary-judgment motion and stayed discovery pending its ruling on that motion.

Jackson also moved for leave to file an amended complaint to state new claims against Douglas; specifically, Jackson alleged in his proposed amended complaint that Douglas failed to perform a surgical revision to Jackson's AV fistula. In his proposed amended complaint, Jackson also restated his allegations against Riebold. In response, Riebold argued that the district court should deny the motion as futile because the existing and proposed complaints contained negligible differences, and the proposed amended complaint did not advance a new claim against Riebold—the only defendant before the court. The district court denied Jackson's motion.

The district court granted summary judgment to Riebold. First, the district court held that sovereign immunity barred Jackson's official-capacity claims against Riebold. Second, as to Jackson's deliberate-indifference claim, the court held that Jackson failed to present any evidence in support of his allegation that Riebold let

him bleed for over two hours before calling an ambulance. The court found that the evidence directly contradicted Jackson's allegation because USMCFP records show that Jackson was in transit to the hospital via ambulance within one hour of a medical emergency being announced.[2] The court determined that the undisputed facts showed that Riebold immediately responded to the medical emergency announcement and, upon his arrival to Jackson's housing unit, immediately assessed the situation and contacted the medical officer on duty. Once the medical officer and Riebold determined that Jackson needed transport to a local, outside hospital for further treatment, Riebold immediately called for an ambulance. Finally, the court held that Riebold was entitled to qualified immunity because (1) Jackson failed to allege a violation of a constitutional right, or, in the alternative, (2) the constitutional right alleged was not so clearly established that a reasonable public official would have known his conduct violated the Constitution.

## II. *Discussion*

On appeal, Jackson argues that the district court erred by (1) granting summary judgment to Riebold on his deliberate-indifference claim, (2) denying Jackson's request for discovery, and (3) denying Jackson leave to file an amended complaint to add a deliberate-indifference claim against Douglas.

## A. *Summary Judgment*

Jackson first argues that the district court erred in granting summary judgment to Riebold on Jackson's claim that Riebold was deliberately indifferent to Jackson's serious medical needs. According to Jackson, the district court erroneously relied on Riebold's self-serving affidavit in concluding that Riebold acted immediately in response to Jackson's medical emergency. Jackson maintains that the district court

---

[2]USMCFP records provide that a medical emergency was announced at 10:30 p.m. regarding Jackson. Jackson, however, averred that a medical emergency was never announced.

improperly disregarded his, Cox's, Fletcher's, and Weatherall's affidavits that contradicted Riebold's assertions of fact. Alternatively, he argues that even the district court's recitation of the facts "demonstrate[] that Mr. Jackson was not given *any* medical attention until he was transferred to the hospital, nearly one hour after the purported medical emergency was announced." Jackson concludes that the "obviousness of the risk and the circumstances surrounding this case give rise to material issues of fact regarding whether Defendant Riebold was aware of the substantial harm his acts would cause to Mr. Jackson and whether he deliberately disregarded that risk."[3]

---

[3]On appeal, Riebold argues that the district court properly granted summary judgment to him on Jackson's deliberate-indifference claim because sovereign immunity bars any official-capacity claims that Jackson asserted against Riebold. Riebold points out that Jackson's *original* complaint is silent as to whether the claims were asserted against Riebold in his individual or official capacity. Riebold contends that, under this court's precedent, an individual-capacity claim must be unambiguous.

In response, Jackson notes that the district court never made a finding that Jackson's complaint raised only official-capacity claims and apparently assumed the existence of individual-capacity claims against Riebold when it granted summary judgment and qualified immunity to Riebold on Jackson's individual-capacity claim for deliberate indifference. But Jackson acknowledges this court's recent reaffirmation "that Eighth Circuit precedent requires a Section 1983 plaintiff to provide a 'clear statement' indicating that the plaintiff is suing a defendant in his or her individual capacity." (Citation omitted.)

Riebold overlooks that in Jackson's proposed amended complaint, he clarified that he was also suing Riebold in his individual capacity. The district court denied the proposed complaint amendment based on futility. *See infra* Part II.C. Because the district court rejected Jackson's amended complaint—which would have expressly added the individual-capacity claim against Riebold—on grounds of futility, we necessarily must address whether, assuming Jackson did sue Riebold in his individual capacity, his claim would have nonetheless failed on the merits.

"We review de novo the district court's grant of summary judgment, applying the same standards as the district court," and we will affirm the grant of summary judgment "if the record indicates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Laughlin v. Schriro*, 430 F.3d 927, 928 (8th Cir. 2005) (quotations and citations omitted). "We review the facts in the light most favorable to the nonmovant." *Id*. (citation omitted).

The Eighth Amendment requires state prison officials to provide inmates with needed medical care. *Id*. (citation omitted). "To prevail on a claim that a delay in medical care constituted cruel and unusual punishment, an inmate must show both that: (a) the deprivation alleged was objectively serious; and (b) the prison official was deliberately indifferent to the inmate's health or safety." *Id*. at 929 (citing *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995)). Because Jackson's deliberate-indifference claim is based on "a delay in medical treatment," we measure "the objective seriousness of the deprivation . . . by reference to the *effect* of delay in treatment." *Id*. (quotations and citations omitted). "To establish this effect, the inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment[.]'" *Id*. (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). Applying this standard, we have previously held that where an inmate "submitted evidence documenting his diagnosis and treatment, [but] he offered no evidence establishing that any delay in treatment had a detrimental effect," the inmate "failed to raise a genuine issue of fact on an essential element of his claim." *Id*. (citing *Dulany v. Carnahan*, 132 F.3d 1234, 143 (8th Cir. 1997) (holding that summary judgment in favor of the defendants was not in error as to inmate-plaintiffs, where neither submitted verifying medical evidence indicating that a delay in treatment resulted in an adverse effect)).[4]

---

[4]*See also Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006) (stating that inmate complaining of delay in treatment must offer verifying medical evidence that delay had detrimental effect); *Senty-Haugen v. Goodno*, 462 F.3d 876, 890 (8th Cir. 2006) ("Senty-Haugen asserts that the state officials delayed treatment . . . . Senty-

As in *Laughlin*, Jackson has provided no evidence showing that any delay in treatment had a detrimental effect. Nonetheless, Jackson argues that an inmate—like himself—who alleges that the need for medical attention was obvious to a layperson need not present verifying medical evidence to prove a deliberate-indifference claim based on a delay in medical treatment. We disagree. *See Coleman v. Rahija*, 114 F.3d 778 (8th Cir. 1997). In *Coleman*, we addressed a deliberate-indifference claim by an inmate who had given premature birth to a child. *Id*. at 783. Specifically, the inmate alleged that a prison nurse had violated her "Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to [her] complaints that she was in labor." *Id*. Following a bench trial, "the district court found that [the inmate] was experiencing pre-term labor and concluded that her condition was sufficiently serious to constitute a serious medical need" in light of the inmate's prior medical history and the symptoms that she exhibited. *Id*. at 784. We held that the district court did not clearly err in finding that "[a] layperson would have recognized the necessity for a doctor's attention at 9:30 p.m." *Id*. at 785 (citation omitted). But our analysis did not end there—we also required the inmate "to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Id*. at 784 (citing *Crowley*, 109 F.3d at 502). We then held that the inmate "presented sufficient 'verifying medical evidence' that [the prison nurse] 'ignored a critical or escalating situation or that the delay posed a substantial risk of serious harm' for her claim to succeed." *Id*. at 785 (quoting *Beyerbach*, 49 F.3d at 1327).

---

Haugen has failed to present any evidence that the alleged delays in treatment worsened his conditions, however, and he has not provided any expert evidence that the treatment he received was inadequate." (citation omitted)); *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) ("To avoid summary judgment an inmate alleging that a delay in treatment constitutes a constitutional deprivation must produce medical evidence to establish that the delay had a detrimental effect." (citation omitted)); *Crowley*, 109 F.3d at 502 (holding that objective seriousness of alleged unconstitutional delay in receiving treatment is measured by reference to effect of delay).

Specifically, the inmate "presented expert testimony . . . that the delay in her treatment posed a substantial risk of serious harm." *Id.* Unlike the inmate in *Coleman*, Jackson has failed to produce any evidence that the alleged delay in his treatment had a detrimental effect.[5]

## B. *Discovery*

Jackson next argues that the district court erred in ruling on Riebold's summary-judgment motion before Jackson could use discovery to obtain relevant evidence related to his constitutional claims. He asserts that he opposed the summary-judgment motion on the grounds that he needed more time for discovery.

Federal Rule of Civil Procedure 56(d) provides:

> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).[6]

---

[5]This case does not require us to decide whether a viable deliberate-indifference claim exists based upon an allegation that the person suffered in great pain as a result of the delay in medical treatment.

[6]"Fed. R. Civ. P. 56(d) provides the procedure for a nonmovant who is unable to 'present facts essential to justify its opposition.' This was previously governed

The general rule is that summary judgment is appropriate "only after the nonmovant has had adequate time for discovery." *Toben*, 751 F.3d at 894 (quotations and citations omitted). Pursuant to Rule 56(d), a party opposing summary judgment may move for a continuance "until adequate discovery has been completed if they otherwise cannot present facts sufficient to justify their opposition" to a summary-judgment motion. *Id*. (quotation and citation omitted). The purpose of this rule is "to prevent a party from being unfairly thrown out of court by a premature motion for summary judgment." *Id*. (quotation and citation omitted). But to obtain a Rule 56(d) continuance, the nonmovant "must file an affidavit affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Id*. (alteration in original) (quotations and citations omitted). A district court has "wide discretion" in ruling on a Rule 56(d) motion. *Id*. at 895 (citation omitted).

Jackson, as "[t]he party seeking additional discovery," must demonstrate the following: "(1) that [he] ha[s] set forth in affidavit form the specific facts that [he] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion." *Id*. (quotations and citations omitted). As to the second element, "[i]t is well settled that Rule 56([d]) does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of [unlawful conduct]." *Id*. (second and third alterations in original) (quotations and citations omitted). "Specific facts sought must be identified. Mere speculation that there is some relevant evidence not yet discovered will never suffice." *Id*. (quotation and citation omitted). The movant must identify "documents or specific facts [that he] believes would contradict" the opposing side's evidence. *Id*. at 896 (citation omitted). Thus, the movant must "show what additional evidence would prove [his] claim meritorious." *Id*. (citation omitted).

---

under Rule 56(f)." *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 n.1 (8th Cir. 2014) (citing Fed. R. Civ. P. 56 2010 Amendments).

Here, Jackson admits that he did not file a formal Rule 56(d) affidavit. But he argues that he essentially complied with the rule despite not filing a formal affidavit. In support of his argument, he notes that he filed a motion to stay a ruling on summary judgment, invoked Rule 56(d), and informed the district court that discovery was necessary.

Jackson did seek postponement of the district court's ruling on Riebold's motion for summary judgment under Rule 56(d); but, Jackson's motion failed to satisfy the second element of a Rule 56(d) motion—"that the facts sought exist." *See id.* at 895. In his motion, Jackson argued that he needed additional discovery to obtain the USMCFP video footage of the night in question to support his version of events and respond to Riebold's motion for summary judgment. But Riebold produced the declaration of SIA Anderson in which SIA Anderson avers that his "review of retained Nice Vision video files . . . reveals that the USMCFP has no video footage concerning inmate Jackson or th[e] alleged incident from June 28, 2012." On this record, Jackson has failed to put that fact into dispute. Therefore, the district court did not err in denying Jackson additional time for discovery.[7]

## C. *Amended Complaint*

Jackson's final argument is that the district court erroneously denied Jackson leave to amend his complaint to include a deliberate-indifference claim against Douglas on futility grounds. First, he asserts that the district court improperly considered matters outside of Jackson's proposed complaint and ignored the salient

---

[7]Jackson argues for the first time on appeal that the videotape may have been destroyed in bad faith. We decline to consider this argument. *See Werner v. U.S. Dep't of Interior, Fish & Wildlife Serv., Bureau of Sport Fisheries & Wildlife*, 581 F.2d 168, 171 (8th Cir. 1978) (holding that arguments not made "to the district court . . . will not be considered by this court when raised for the first time on appeal" (citations omitted)).

allegations against Douglas. Second, he contends that he stated a cognizable deliberate-indifference claim against Douglas.

"Generally, we review the denial of leave to amend a complaint under an abuse of discretion standard; however, 'when the district court bases its denial on the futility of the proposed amendments, we review the underlying legal conclusions de novo.'" *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (quoting *Walker v. Barrett*, 650 F.3d 1198, 1210 (8th Cir. 2011)).

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave *when justice so requires*." (Emphasis added.) "But a party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim." *Plymouth Cnty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014) (citing *Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir. 1999)). "Futility is a valid basis for denying leave to amend." *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009). "Duplicative and frivolous claims are futile." *Reuter v. Jax Ltd.*, 711 F.3d 918, 922 (8th Cir. 2013) (citations omitted).

Here, Jackson's original pro se complaint set forth a deliberate-indifference claim against only Riebold. In his motion for leave to file an amended complaint, Jackson requested "to join a party, and add a section titled 'Cause of Action Count I' to specifically state how each defendant violated Plaintiff's Eighth Amendment Right to be free from cruel and unusual punishment, and exercised deliberate indifference to his health and safety." In addition to his claim against Riebold, Jackson sought to raise in his amended complaint a deliberate-indifference claim against Douglas for "fail[ing] to perform [revision] surgery [on his AV fistula] or hav[ing] [Jackson] sent out to have it done."

Jackson's amended complaint stated a *duplicative* claim to what was already stated in the original complaint; that is, Jackson's amended complaint reiterated the same deliberate-indifference claim against Reibold. The duplicative nature of the claim renders the motion to amend futile. *See Reuter*, 711 F.3d at 922. Jackson also sought to join a new party who is not currently a named defendant. Jackson's addition of a new party with a new claim against that party appears to be an effort to circumvent Riebold's motion for summary judgment. *See, e.g.*, *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) ("The assertion of this claim on the eve of summary judgment also weighs against [the plaintiff]." (citing *Overseas Inns S.A.P.A. v. United States*, 911 F.2d 1146, 1150–51 (5th Cir. 1990) (upholding district court's decision to refuse leave to amend complaint when party sought to add a claim in an effort to avoid summary judgment)). Accordingly, we affirm the district court's denial of Jackson's motion for leave to amend his complaint as futile.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____