# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3516

_____

Bruce Lindholm, individually and as personal representative of the estate of
Alexander Nels Lindholm; Vanoosheh Lindholm, individually

*Plaintiffs - Appellants*

v.

BMW of North America, LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre

_____

Submitted: June 5, 2017
Filed: July 3, 2017

_____

Before WOLLMAN, ARNOLD, and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Using a jack supplied by his car's manufacturer, Alex Lindholm was repairing his car when, tragically, it fell and killed him. Relying on federal courts' diversity jurisdiction, Alex's father sued BMW of North America, LLC, the car's American distributor, on behalf of Alex's estate, and both of Alex's parents sued in their individual capacities. They laid claims for strict liability based on defective design,

negligence, negligent design, breach of implied warranties, and wrongful death. The district court[1] granted BMW's motion for summary judgment on each of the Lindholms' claims, and they appeal.

The day before the accident, while working on the car's exhaust system located near the center of the car's undercarriage, Alex and his father used the relevant jack to raise it off the ground. Alex told his father that the jack was the proper one for the job. After using the jack to raise the car, Alex placed a jack stand under it to hold it in place while they worked.

Alex continued working on the job the next day. When one of his friends picked him up at one point to run errands, the friend noticed that the car was lifted in the back passenger area with the jack. Alex informed the friend that he wanted to use that particular jack because it was the manufacturer's jack. Other jacks and jack stands were in the storage unit where the work was performed, but on the day of the accident, only the jack in question supported the car. While Alex was working, the jack evidently tipped and the car fell on him. He asphyxiated and died.

The Lindholms' expert testified that the jack was not defective per se but that that type of jack represented a "regression in design" that compromised safety. In reaching the conclusion that the jack was unsafe, he noted its narrow base, its plastic (rather than steel) pivot head, and two polymer castings in the upper pivot that "click" together to fit, whereas other jacks are "rigidly pinned" together. He calculated that the jack could bear a lateral load of up to 65 pounds while fully extended, whereas a different kind of jack known as a scissor jack with a wider base could withstand a lateral load of up to 260 pounds while fully extended, at least in part because it has a

---

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

wider base. He opined that jacks like the one Alex used are defective and unreasonably dangerous because consumers do not always use them correctly.

BMW's expert thought that the deficiencies that the Lindholms' expert identified either did not cause the accident or were not deficiencies at all. He explained that Alex was probably able to use enough force to knock the jack over only by rocking the car back and forth. Based on his opinion that Alex had to be rocking the car back and forth, he thought it was likely that Alex was trying to loosen an intractable bolt. Alex's father had found items under the car after the accident that were consistent with this hypothesis: In fact, Alex's father tried to loosen the bolt in question, but it was on so tight that the bolt broke off in his effort to remove it.

We review the district court's grant of summary judgment de novo. *Jackson v. Riebold,* 815 F.3d 1114, 1119 (8th Cir. 2016). We will affirm if the record indicates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* We review the facts in the light most favorable to the Lindholms. *See id.* We apply state substantive law in diversity cases, and where state courts have not decided a particular substantive legal issue of relevance, we must try to predict how the state's highest court would do so and decide the case accordingly. *See Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 936–37 (8th Cir. 2012).

We turn first to the Lindholms' design-defect claim. South Dakota has adopted the rule of strict liability set out in the Restatement (Second) of Torts § 402A, *Karst v. Shur-Co.*, 878 N.W.2d 604, 609 (S.D. 2016), which says that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused." So to prevail, the Lindholms must prove that the jack Alex used was defective and unreasonably dangerous and that it caused the injury sustained. *See Brech v. J.C. Penney Co., Inc.*, 698 F.2d 332, 333–34 (8th Cir. 1983).

The district court concluded that BMW was not liable because Alex had misused the jack on the day of the accident. Misuse can involve using a product for an unintended function or using the product for its intended function but in an improper manner. *Peterson v. Safway Steel Scaffolds, Co.*, 400 N.W.2d 909, 913 (S.D. 1987). Though a product manufacturer can be liable for a customer's reasonably foreseeable misuse, *id.*, a manufacturer cannot be liable for a misuse that it cannot reasonably anticipate. *Kappenman v. Action Inc.*, 392 N.W.2d 410, 413 (S.D. 1986).

The parties dispute whether Alex misused the jack. The Lindholms argue that Alex used the jack in exactly the way it was intended to be used—to lift a car. They also maintain that, should we nonetheless conclude that Alex misused the jack, BMW should be liable because his misuse was reasonably foreseeable. BMW emphasizes the warnings that Alex disregarded: The car's owner's manual said that the jack "is designed for changing tires only" and that one should "[n]ever lie beneath the vehicle or start the engine while the car is supported by the jack - risk of fatal injury!" And a picture on the jack itself warned against lying under the car while using the jack. BMW argues that Alex's disregard for these warnings resulted in misuse.

We agree with BMW and the district court that a reasonable jury would have to conclude that Alex misused the jack. Though it could be said that Alex used the jack for its intended purpose—to lift a car—he did so in an improper manner. *See Peterson*, 400 N.W.2d at 913. The warnings in the owner's manual and on the jack made it clear that Alex should not have used the jack while doing something other than changing a tire or while lying under the car. Alex could have used other available jacks or jack stands to support the car; in fact, the evidence showed that he had done so the day before the fatal accident. Besides, the Lindholms' argument that Alex used the jack for its intended purpose of lifting a car has only a surface appeal: The manufacturer's warnings make it clear that Alex used the jack for a purpose for which it was not intended.

-4-

We conclude that Alex's misuse of the jack was not foreseeable as a matter of law, given the warnings that accompanied it. Comment j to § 402A addresses this very issue: "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Though the Supreme Court of South Dakota has not adopted this comment to our knowledge, we agree with the district court that it would likely do so if confronted by a case like this one. That court frequently relies on the comments to § 402A; it did so four times in *Peterson* alone. 400 N.W.2d at 912–13. The *Peterson* court even relied on comment h, which expressly refers to comment j. *See id.* at 913. We therefore have no difficulty concluding that the Supreme Court of South Dakota would apply comment j to these circumstances. That comment makes clear that it is unforeseeable that a user would fail to heed safety warnings, and the Lindholms do not argue that the warnings were somehow inadequate. Alex's misuse of the jack was therefore legally unforeseeable.

As an independent ground for granting summary judgment on the strict-liability claim, the district court relied on a South Dakota statute that provides that a product distributor cannot be held strictly liable unless the distributor "knew, or, in the exercise of ordinary care, should have known, of the defective condition of the final product." S.D. Codified Laws § 20-9-9. The time for assessing knowledge that a product is defective is the time that the product was first sold; knowledge acquired later is irrelevant. *First Premier Bank v. Kolcraft Enters., Inc.*, 686 N.W.2d 430, 452 (S.D. 2004), *superseded on other grounds by rule*, Supreme Court Rule 06–67, *as recognized in Karst*, 878 N.W.2d at 610 n.4.

The Lindholms point out that BMW had received two reports of their jacks failing and injuring others, giving BMW either knowledge or constructive knowledge that they were defective. But these incidents occurred after the car here was sold in 1997, so they do not reveal anything about BMW's knowledge at the relevant time. The Lindholms also maintain that BMW should have known that the jack was

defective for the reasons given by the Lindholms' expert. We reject their attempt to circumvent § 20-9-9; a claimant cannot prove that a distributor knew or should have known that a product was defective just by proving that the product was defective. Otherwise the application of the statute would rise and fall with the plaintiff's proof on defectiveness, relegating the statute to superfluity. If the expert had identified some relevant event that occurred before the sale of the product, or explained how the jack was so manifestly defective that anyone (or any manufacturer) would have to realize that it was, then maybe the Lindholms' approach would work. But where the expert merely states reasons why he concludes that a product is defective, we cannot simply impute the substance of the opinion to the distributor. We therefore agree with the district court that § 20-9-9 provides an independent ground for summary judgment on the strict-liability claim. Since the record taken as a whole could not lead a rational jury to find for the Lindholms on this claim, summary judgment was appropriate.

As for the Lindholms' negligence and negligent-design claims, we think that Alex's misuse of the jack also constitutes contributory negligence, which bars the Lindholms from recovering. *See Burhenn v. Dennis Supply Co.*, 685 N.W.2d 778, 786–87 (S.D. 2004). We recognize that under South Dakota law, "the fact that the plaintiff [in a negligence case] may have been guilty of contributory negligence does not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant." S.D. Codified Laws § 20-9-2. But when facts show beyond dispute that the plaintiff's negligence is more than slight, then it is appropriate to hold as a matter of law for a negligent defendant. *Schmidt v. Royer*, 574 N.W.2d 618, 627 (S.D. 1998). "Slight" in this context means "small of its kind or in amount; scanty; meager." *Wood v. City of Crooks*, 559 N.W.2d 558, 560 (S.D. 1997). Even assuming that BMW was somehow negligent, and we see no real evidence of that, we think that a reasonable factfinder would have to conclude that Alex's contributory negligence was anything but slight; it was quite clearly the primary cause of the accident. We therefore have no trouble concluding as a matter of law that Alex's contributory negligence defeats the Lindholms' negligence and

negligent-design claims. Summary judgment on the negligent-design claim was appropriate, moreover, since BMW, as distributor, did not design or manufacture the car or the jack. We also affirm the grant of summary judgment on the Lindholms' implied-warranties claim because of Alex's misuse. *See Herrick v. Monsanto Co.*, 874 F.2d 594, 598 (8th Cir. 1989).

Finally, a wrongful-death claim arises when death is "caused by a wrongful act, neglect, or default, and the act, neglect, or default is such as would have entitled the party injured to maintain an action and recover damages in respect thereto" had the injured party lived. S.D. Codified Laws § 21-5-1. As the district court did, we read § 21-5-1 as not supplying an independent theory of recovery for a death: It plainly requires an underlying legal basis for a wrongful-death claim to succeed, that is, a reason to hold that a death was wrongful. Because we have already concluded that summary judgment was appropriate on all of the underlying claims that the Lindholms advanced, we affirm the grant of summary judgment on the wrongful-death claim.

Affirmed.

_____